IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 1:06cr00076-003** |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **MARTY ERIC HARRISON, et al.,** | ) | |
| **Defendants** | ) | **By: PAMELA MEADE SARGENT** |
| | ) | **United States Magistrate Judge** |

*I. Background*

This case is before the court on the motion of defendant Robert St. Pierre to suppress evidence, (Docket Item No. 57), ("the Motion"). The Motion is before the undersigned magistrate judge by referral pursuant to Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). The undersigned conducted a hearing on the Motion on March 22, 2007. As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

*II. Facts*

St. Pierre has been charged with two co-defendants, Marty Eric Harrison and Tara N. Shortt, in an eight-count indictment. St. Pierre is charged with one count of conspiracy to possess with intent to distribute and to distribute of 100 kilograms or more of marijuana in violation of 21 U.S.C. § 846, one count of possession with intent to distribute and distribution of more than 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), one count of use or possession

-1-

of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c), one count of being an unlawful user of a controlled substance in possession of a firearm in violation of 18 U.S.C. § 922(g)(3), and one count of maintaining a place for the manufacture of a controlled substance in violation of 21 U.S.C. § 856(a)(1).

Chris Parks, a narcotics investigator with the Abingdon, Virginia, police department, testified that he was contacted by Tennessee First Judicial District Drug Task Force officer Matt Thompson on October 5, 2006. Thompson told him that Tennessee law enforcement officers had just stopped a vehicle driven by Harrison in Johnson City, Tennessee, and had found a large quantity of marijuana in the vehicle. Thompson stated that Tennessee law enforcement officers had observed Harrison leaving a residence a 330 Lowry Drive, Abingdon, Virginia, earlier that day and that Harrison had not made any stops prior to the traffic stop in which the marijuana was found in the vehicle.

Parks stated that, as a result of the information given to him by Thompson, he and three other officers traveled to a residence located at 330 Lowry Drive, Abingdon. Parks stated that they arrived at the residence after dark at approximately 8 p.m. He said that he and another officer approached the front door and either knocked on the door or rang the doorbell. Parks stated that two individuals came to the door, a male and a female. The male, St. Pierre, identified himself as Harrison's roommate. When Parks asked if he could have permission to search the house, both St. Pierre and the female told him that he could not search without a warrant. Parks stated that he then left to obtain a warrant to search the residence. Parks stated that, while at the

residence, a man who identified himself as the owner of the residence told him that Harrison was the renter of the residence.

Parks stated that he then prepared an affidavit for a search warrant and presented it to a state magistrate judge. A copy of the affidavit he prepared was admitted into evidence as Government's Exhibit No. 1. The state search warrant, issued on October 5, 2006, for 330 Lowry Drive, Abingdon, was admitted as Government's Exhibit No. 2. In this affidavit, the place to be searched was identified as a "single family dwelling located at 330 Lowry Drive Abingdon, Virginia." Attachment "A" to the affidavit stated:

> In [t]he past forty-eight hours, over ten (10) pounds of marijuana has been discovered that is related to the aforementioned residence. Officers with the Tennessee First District Drug [T]ask Force began surveillance on the residence and during that time, acting on a tip that marijuana was being taken from 330 Lowry Drive to various points in Johnson City, Tennessee. The officers observed Harrison as he moved his vehicle to the back portion of the residence. Harrison was there approximately five (5) minutes before he departed. Harrison traveled until he was stopped for speeding. From the time he left the residence until he was stopped by law enforcement the vehicle was kept under constant surveillance by officers and no packages were seen entering or leaving the vehicle. During the traffic stop, a K-9 checked the vehicle and alerted to the presence of narcotics. Following the alert from the certified K-9, the vehicle was searched and a large amount of marijuana that is well over ten (10) pounds was seized.
>
> Upon speaking with the owner of the residence it was discovered that Harrison is the renter of the house located at 330 Lowry Drive.

A Virginia state magistrate found that the affidavit established probable cause

and issued a warrant authorizing a search of a "residence located at 330 Lowry Drive Abingdon, Virginia, which is further described in the attached affidavit." Parks stated that he then returned to the residence and conducted the search.

Lieutenant Kevin Christy, a criminal investigator with the Abingdon Police Department, testified that he accompanied Parks to the residence at 330 Lowry Drive on October 5, 2006. While Parks approached the front door, he and another officer went around to the back of the residence to ensure that no one left the residence. He stated that he did not hear the conversation that occurred between Parks and the occupants of the residence. After Parks was denied permission to search the residence, Christy stated that he went inside the residence to secure the residence while Parks and the others left to obtain a search warrant. Christy stated that St. Pierre and two females were inside the living room of the residence. These individuals were told that they could have a seat in the living room and stay or they were free to leave. Christy stated that St. Pierre and the two women were not suspects at that time, and that none of them were restrained in any way. He did state that NCIC checks were run on each of the individuals to determine if there were any outstanding warrants for their arrests and there were none.

A short time later, St. Pierre asked to leave the residence, but stated that he wanted to retrieve some of his personal belongings and clothing from a bedroom before he left. Christy stated that he told St. Pierre that he might do so only if he allowed Christy to accompany him. Christy stated that St. Pierre responded, "Come on." Christy said that St. Pierre led him down a hallway to a bedroom. Christy stated that the residence was a single family ranch-style residence with all the bedrooms on

the same level. The door to the bedroom did not appear to have any lock or any way to secure it. Christy stated that he entered the room before St. Pierre. Christy took three to four steps inside the room and glanced around. Christy stated that the closet door was open and that there was a mattress on the floor about one and a half feet from a wall. Christy stated that he saw a pistol on the floor between the mattress and the wall. Christy stated that he took possession of the firearm and unloaded it to ensure his safety. He admitted that, at the time that he took possession of the firearm, he did not have any knowledge that the firearm was evidence of a crime. Christy stated that he also saw a small plastic bag of what appeared to be marijuana, but that he left the bag in the room. Christy stated that St. Pierre retrieved some clothing from the room and then left the residence. He stated that the two women later left the residence as well. Christy stated that when the two women left the residence, he went outside to wait on the officers obtaining the search warrant.

### *III. Analysis*

In the Motion, St. Pierre argues that the court should suppress all evidence seized by law enforcement officers during the October 5, 2006, search of St. Pierre's room, including the firearm seized by Christy when he accompanied St. Pierre into the room prior to obtaining the search warrant. St. Pierre argues that the evidence should be suppressed because it was gathered in violation of the Fourth Amendment's prohibition against unreasonable search and seizure. *See* U.S. CONST. amend. IV. In particular, St. Pierre argues that the firearm should be suppressed because it was seized before a search warrant was obtained and because, at the time it was seized, Christy had no reason to suspect that it was evidence of a crime. St. Pierre argues that

-5-

the other evidence seized from his room should be suppressed because the warrant did not give officers the authority to search his bedroom.

It is true that the Fourth Amendment to the U.S. Constitution requires a search warrant to particularly describe the place to be searched.. "...[N]o Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched...." U.S. CONST. amend. IV.  St. Pierre argues that, because he had a separate expectation of privacy in his bedroom versus the common areas that he shared with his roommate, Harrison, the Fourth Amendment ban on unreasonable search and seizure prohibited the officers from searching his room without a warrant specifically identifying his bedroom as the place authorized to be searched based on a finding of probable cause that evidence of a crime existed in his bedroom.

It should be noted that St. Pierre does not contest that probable cause existed for the issuance of the warrant to search this residence. Furthermore, the search warrant issued by the state magistrate in this case gave officers the authority to search the entire residence located at 330 Lowry Drive.  The evidence before the court shows that the residence at 330 Lowry Drive was constructed as a single-family residence and had not been divided into separate living quarters.  Instead, the evidence before the court shows that the entire residence was rented by Harrison.  There is no evidence that Harrison's access to the room used by St. Pierre was limited in any way. In particular, there was no evidence that the room had a separate entrance or that the door to the room had a lock, which allowed restricted access to the room. That being the case, I find that the Fourth Amendment was not violated by the search of St. Pierre's room because I find that the search warrant at issue described the place to be searched

with the necessary particularity and was supported by a finding of probable cause. *See United States v.Canestri*, 518 F.2d 269, 273 (2nd Cir. 1975) (search warrant for a single-family residence cannot be frustrated by a declaration that one of the rooms belongs to a party not named in the warrant); *United States v. Jordan*, 349 F.2d 107, 109 (6th Cir. 1965) (search of entire residence pursuant to warrant reasonable where no indication that residence had been divided into more than one living unit and one person rented the entire residence); *see also United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991) (a search warrant for the entire premises of a single family residence is valid notwithstanding the fact that it was issued based on information regarding the alleged illegal activities of one of several occupants of the residence). Therefore, I recommend that the court deny the Motion insofar as it seeks to suppress any evidence seized from St. Pierre's bedroom in the search of 330 Lowry Drive pursuant to this search warrant.

I also recommend that the court deny the Motion insofar as it seeks to suppress the firearm recovered by Christy from St. Pierre's room. St. Pierre argues that the seizure of the firearm violates the Fourth Amendment in that it occurred prior to the issuance of the search warrant and with no evidence that the firearm itself was contraband or evidence of a crime. The Fourth Amendment protects against "unreasonable" search and seizure. U.S. CONST. amend. IV. Furthermore, in an ordinary case, a seizure which occurs without the benefit of a warrant is unreasonable, unless the circumstances of the seizure fit into one of the recognized exceptions to the warrant requirement. *See Illinois v. McArthur*, 531 U.S. 326, 330 (2001). "When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual,

circumstances may render a warrantless search or seizure reasonable." *McArthur*, 531 U.S. at 330. The Court has recognized that in certain circumstances, i.e., "exigent circumstances," a specially pressing or urgent law enforcement need may permit a temporary seizure without a warrant. *McArthur*, 531 U.S. at 331. In particular, the Court has found that exigent circumstances permit the warrantless entry and control of persons and property while a search warrant is being obtained. *See McArthur*, 531 U.S. at 331-32; *see also United States v. Cephas*, 254 F.3d 488 (4th Cir. 2001); *United States v. Turner*, 650 F.2d 526 (4th Cir. 1981). In such cases, the Court balances the privacy-related and law-enforcement-related concerns to determine if the seizure was reasonable. *See McArthur*, 531 U.S. at 331; *United States v. Baker,* 78 F.3d 135, 137. (4th Cir. 1996).

In this case, the government argues that Officer Christy's seizure of the firearm, which was in plain view once he entered the bedroom, was reasonable in this case for his own safety. I agree. It is important to note that St. Pierre does not contest the reasonableness of Officer Christy's entry into the residence to secure the premises while other officers obtained a search warrant. Furthermore, St. Pierre concedes that he was not unreasonably detained in that he was told that he was free to leave the residence if he chose to do so. Prior to leaving the residence, St. Pierre asked to retrieve some personal belongings from his room. Christy told St. Pierre that he may do so only if he allowed Christy to accompany him. St. Pierre then agreed by responding, "Come on." Therefore, it appears that Christy's venture into St. Pierre's bedroom was upon St. Pierre's invitation and with St. Pierre's consent. It further appears that Christy's accompaniment of St. Pierre to his room was reasonable in light of Christy's duty to ensure that no evidence was destroyed or removed from the

-8-

residence. Christy's testimony is that he stepped three to four steps into the bedroom and simply glanced around the room to determine whether any weapons were present. In doing so, he saw the firearm lying on the floor. He then took possession of the firearm and unloaded it for his own safety.

While I can find no cases specifically on point with the facts and circumstances of this case, numerous cases recognize a law enforcement officer's right to protect himself by ensuring that a weapon is not readily accessible. *See United States v. Hensley*, 469 U.S. 221, 235 (1985) (after stop of automobile, officers "were authorized to take such steps as were reasonably necessary to protect their personal safety," including search the vehicle for weapons); *United States v. Raymond*, 152 F.3d 309 (4th Cir. 1998) (if a reasonably prudent person would believe that the officer's safety, or the safety of others, is endangered, the officer may, without a warrant, conduct a limited search of outer clothing to discover any weapons). Such weapon searches have been found permissible even after the person approached by law enforcement is in police custody and not free to retrieve a weapon. *See Maryland v. Buie*, 494 U.S. 325 (1990) (protective sweep searches of buildings incident to arrest of persons in building are permissible to protect safety of the arresting police officers); *New York v. Belton*, 453 U.S. 454, 457 (1981) (search of passenger compartment of automobile after custodial arrest of occupant of vehicle). Furthermore, the seizure of a weapon is justified based on its inherently dangerous nature regardless of whether it is possessed legally. *See United States v. Atchley*, 474 F.3d 840, 850 (6th Cir. 2007). That being the case, I find that, balancing St. Pierre's privacy-related concerns and Christy's law enforcement-related concerns, including, primarily, the concern for his own safety, Christy's seizure of the firearm was reasonable and did not violate St. Pierre's rights

under the Fourth Amendment.

Should the court find that Christy's seizure of the firearm was not reasonable under the Fourth Amendment, it appears that the firearm should not be suppressed because it would have been discovered by lawful means as soon as the officers searched the residence pursuant to the warrant. *See Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. George*, 971 F.2d 1113, 1121-22 (4th Cir. 1992).

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The residence located at 330 Lowry Drive is a single-family type dwelling and was rented by Harrison;
2. The room identified as St. Pierre's bedroom had no private entry, and there is no evidence that access to this room by the occupants of the residence was limited in any way;
3. The search warrant at issue in this case described the place to be searched with the necessary particularity as the residence at 330 Lowry Drive and was supported by probable cause;
4. The search of St. Pierre's bedroom was authorized by the warrant;
5. Officer Christy's presence in the residence to prevent any of the occupants from removing or destroying evidence while awaiting the issuance of a search warrant was reasonable;

-10-

6. Christy ventured into St. Pierre's bedroom upon St. Pierre's invitation and with his consent;

7. Once in St. Pierre's bedroom, the firearm was within Christy's plain view;

8. Christy's seizure of the firearm was justified to ensure his safety; and

9. The seizure of the firearm was reasonable and did not violate St. Pierre's Fourth Amendment rights.

## RECOMMENDED DISPOSITION

Based upon the above-stated reasons, the undersigned recommends that the court deny the Motion.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within ten days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with

instructions.

Failure to file timely written objections to these proposed findings and recommendations within ten days could waive appellate review. At the conclusion of the 10-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen M. Williams, Senior United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED: This 20th day of April 2007.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE